All right, counsel you may proceed. Thank you. May it please the court, George Chipev appointed pro bono counsel from Latham & Watkins on behalf of the petitioner Liliana Avila. Yesterday afternoon, over two years after briefing ended, the government conceded that this case should be remanded to the BIA in light of ARCG, where the board held that married women in Guatemala who are unable to leave their relationship are a particular social group. But although remand is appropriate on the issue of whether Liliana was and will be persecuted on account of her membership in a particular social group, the government still fails to confront a threshold error by the board. Contrary to substantial evidence in the record viewed as a whole, it inexplicably held that Liliana didn't suffer past persecution in Mexico at the hands of her husband. There's overwhelming undisputed evidence in the record that the government wants to remand. Yes. And if you prevail, there will be a remand. Yes. What you want is for us to make a determination as to what the record showed here. And in other words, you want to proceed with your case. With respect to the threshold question of whether she was persecuted, which the BIA and the IJ both said that she didn't suffer domestic abuse in Mexico. But you're asking us, we can't proceed with part of a case. You've made an appeal. You want us to decide on that. If you lose, you lose what the government's offering you now. Yes, Your Honor. If you disagree with us, at least with respect to the past persecution question, whether she was abused in Mexico, that would affect part of the inquiry. But there is still the freezer persecution element, which could be take the government's request to remand this case to the agency as a concession that abused women in Mexico who cannot leave their husbands. Are a particular social group as as ARC would suggest? The government obviously doesn't concede that it's an error. We think that it has made it clear in the cases like matter of LR where it briefed this exact same social group that it believes that these groups are probably cognizable. There is no BIA precedent to that effect since the LR brief was submitted by DHS several years ago. But the BIA, the agency has consistently been reviewing these types of cases through the formulation of this unable to leave a relationship framework. Well, my question on that is, why are they doing it? Or what is it appropriate to be doing it country by country? I mean, do you have to specifically look at what the culture is, say, in Guatemala or Mexico to determine that women are unable to leave these abusive situations or the police are unwilling to help them get out of these abusive situations? Your Honor, the way the BIA has formulated the social distinction element of the particular social group inquiry, you do have to look at the society in question and whether the society itself perceives, considers or recognizes the group to be a distinct part of society, which is why they've been cabining it probably country by country. Now, ideally, it would be looked at more broadly in the domestic violence. But we know, for example, expert testimony in other cases that we've seen that women in the United States who suffer domestic abuse are often unable to leave their husbands and the police are often unwilling to help them. So I'm just wondering, you know, that is a common characteristic of the whole situation of domestic abuse. Yes, it is. And it's one of the reasons why the court has also recognized in cases like Afria that you don't have to actually go directly and report the violence because there are certain systemic issues. Here, at least, in terms of defining a group so that it's not overly broad, if that's the court's concern, that you'd be letting in one too many people through the avenue of domestic violence claims. There are, as the government itself recognized in DHS, numerous other elements to determining whether this particular applicant should be granted withholding of removal, both the persecution, whether it's on account of the membership in that group, and then, of course, whether or not there's been rebuttal of the presumption, but if you have shown past persecution. But the government, at least in this case, hasn't been contesting that this is a potential group. It obviously thinks that remanding to the BIA is appropriate for it to consider it. You know, what I was trying to pursue with you is that you were turning down an offer. The case wasn't decided on that basis. It was decided on the basis that there was not sufficient evidence that she was persecuted in Mexico. That's correct. All right. Now, if we would hear your arguments, hear the case, decide that, and agree with the government on that, you would be out of luck permanently. They're now offering you an opportunity of a remand, and if they really believed that the case was dispositive on the ground that there was no past persecution, I don't know why they would offer a remand, but you want to turn that down and take your chances that you're going to win on the argument that really was in the BIA's finding, which was based on the fact that there was no persecution in Mexico. Well, Your Honor, we certainly want us to decide that issue, but only if we decide it in favor of you, because if we decide it against you, you're giving up the whole case. Well, Your Honor, two points. First, obviously, we would prefer the best result for the client, which, if that is a remand under the government's framework, that's ideal, but accepting that, I think, you know, the record as a whole doesn't really compel a different conclusion here with respect to whether she was persecuted in Mexico. No, no, I understand that, and I'm not suggesting your argument's a bad argument. I'm just asking whether you have thought through the subject of whether you really want us to decide that issue, which, if it's decided against you, would mean the end of your case, and you weigh that against the offer you have from the government to remand to determine an issue that would not seem to be dispositive, unless the government is willing to reconsider its argument that there was no evidence of persecution occurred in Mexico. Well, Your Honor, I think the way that the remand should be formulated to address that, then, is to ensure that it is on all of the issues in this case. The government is saying to remand in light of ARCG, including Liliana's claim that she was persecuted in Mexico. Now, that's certainly true, but if the BIA, again, makes the exact same error on the factual threshold question, it would do exactly what the IJ did below and say, I'm not even going to reach the question of the particular social group if I still find her testimony. That's right. Now, if they're going to ask for a remand on the social group question, you would think they would not come back and say, we were wrong to ask for a remand, that's not relevant. So, you would be willing to take the remand if all issues, it was remanded on all issues? Yes, that would be the preferred approach. I don't know that the government has any objection. They've just asked for a remand. If you don't mind, may I just ask the government? Why don't you save your minute and a half for rebuttal and we'll talk to the government now. Thank you. Good morning. My name is David Kim. I represent the United States government. I'd like to first address Judge Breinhardt's concern about perhaps the teleological or options-based nature of the request, of the position that is taken by Ms. Avila. The judge asked whether Ms. Avila is looking to remand only if the outcome in the agency below might be favorable to her case. And, well, I think that's a question that, that's a concern that Ms. Avila cannot actually raise because the whole point of invoking the ordinary remand rule in the first place is to give the board a chance to actually address that question in the first instance. The question being whether there was past persecution. Your remand says that all issues are open in a remand. Well, so the discrete issues that we do point out is recognizability of a proposed social group as well as... Below, the agency didn't even reach that because the agency said there was no past persecution. So I have to say this whole remand thing that came in, you know, late yesterday afternoon is kind of puzzling because ARCG was decided well before this case. It wasn't an issue decided by the BIA or the IJ in this case. And you want a remand in light of that, yet there was a finding in this case that there was no past persecution in Mexico, which I think was an incorrect finding. There was past persecution in Mexico. Well, respectfully, Your Honor, any question involving past persecution necessarily implicates the threshold questions of cognizability and also the question of nexus. And the specific finding of the immigration judge here was not that her group was or wasn't cognizable or that there was or wasn't nexus. The specific finding was that she failed to press her claims and present evidence in support of this notion that she was... What relevance is it whether there's a social group or not? Well, that's a determination that needs to be made to... Why? If there's no evidence of past persecution? It's not that there was no evidence. It's that she failed to testify when given a reasonable opportunity to do so with respect to her claim of abuse in Mexico. She testified she was raped at 14 by this man and forced to marry him by his family and thereafter suffered regular beatings. And when she tried to leave, he would beat her up and threaten her. And that once they moved to the United States, this abuse continued. And finally, I guess she was able to get a divorce and he went back to Mexico, but he's still threatening her. She didn't actually testify to that during the hearing. She only raised that issue during her reasonable fear interview. And yet, despite being given multiple opportunities to actually testify... Is that an issue that can be reconsidered on remand? That is an issue that will necessarily have to be reconsidered in light of the fact that any analysis as to past persecution has to necessarily involve the question of cognizability and nexus. I'm trying to find out what the nature of the remand you are asking for and see whether the other side would be agreeable to the remand. Is this a remand without limitation for the board to reconsider all issues? If the board finds that it has to consider all the evidence that was raised during her reasonable fear interview or during the removal hearing and actually determining the limited questions of cognizability and nexus, then the board should be allowed to do so. No, I'm not asking what the board should be allowed to do. I'm asking the nature of the remand. Is this a remand for the board to consider all issues or is it a limited remand in some respect? Well, I would say it's a remand to consider all issues to the extent that the starting point of this whole discussion is whether or not there was past persecution. And that's a question that necessarily implicates the questions of cognizability and nexus. It might seem a bit involved, but what we're saying is that these issues of cognizability and nexus are foundational issues that need to first be determined before any analysis as to past persecution can be conducted. So another issue in this case I find odd is that the reasonable fear determination found her credible and found that she suffered past persecution on account of her membership in the particular social group of Mexican women unable to leave a domestic relationship. So that was found by her in her initial interview. And then that's why I find the BIA's decision, IJ's decision, that she didn't suffer past persecution odd. Well, she was given a chance to actually meet her burden of proving her past persecution claim. Now, she didn't actually prove that at the point of the reasonable fear interview. That was only a threshold determination to decide whether or not her case should even get to the immigration judge in the first place. And so she did raise the prospect that she had been abused by her husband in Mexico, but she failed to actually pursue that claim before the immigration judge. I'm not sure if that addresses your concern. Is there some limitation that you're concerned about so that you don't want to say that we are remanding for reconsideration of the entire matter? We're not concerned about any error that the board may or may not have made. We're not conceding any error by the board. You don't have to concede anything. I'm asking you whether you are asking for a remand that will permit a reopening of any issue, of all issues, or are you limiting the remand? Again, everything harkens back to this idea of recognizability of the group, as well as whether she was or was not persecuted on account of her membership in that proposed social group. And so to the extent that those two issues are foundational, I'd say the board will be free to consider all issues. It would be a comprehensive remand in that sense. When did the lightning bulb go off in the government that this case had some merit? So the lightning bulb went off after I was assigned to argue the case and after we really spent time with the case and engaged in considerable discussion as to whether this was appropriate for remand. Now our office is extraordinarily circumspect about asking for a remand. We only do so in cases where we find that a remand is, that there's a compelling reason for a remand. And we do find that there is a compelling reason in this particular case. Suppose you determined on remand that the same rule applies to Mexican women as it applies to Guatemalan women. Then where are we? Well, once you determine, if the board has determined that this is a cognizant social group, then the next question would be nexus, and on top of that, whether or not there was a governmental actor or someone that the government was unable to control that was actually involved in this persecution. And what about your finding that she was not persecuted in Mexico, that the events did not take place there? Well, again, the board would have to give Ms. Avila an opportunity to actually testify as to those claims and not merely rest on the statements that she made to the asylum officer during the reasonable fear interview. That simply isn't enough. What issue would not be open if we remanded? I mean, that would really be dependent on how the board rules on the initial question of whether or not the group is cognizable. I mean, everything kind of flows from there. And so it's difficult for me to speculate up here what would or would not be within kind of the scope of the board's consideration of her claims. What I really want to do is, you think that maybe there was a mistake made, and you think that this might be a cognizable social group, and you want to investigate it further, have further hearings on whether she was actually persecuted in Mexico? It doesn't really matter whether I think that there was a mistake made. The government. You are representing the government, right? Sure. All the government is saying is that. Even the question of whether or not there was an error can't really be decided unless we consider this initial question of whether the group is even cognizable in the first place. Well, you can look at it the other way around. If your decision is right and there was no past persecution, it doesn't matter whether there's a group. But that would really be putting the cart before the horse.  Now I also, you know, you're right. It doesn't matter a lot what you say. What matters is what we put in an order of remand. And basically what your opponent is saying, you offered a remand. They're saying, yes, we would be willing to have a remand if you will say that all of the issues are open. It's a remand without limitation. And you are, for some reason, hesitant to agree to that. Well, that's not quite how we phrased our motion. But if the court finds that what we're actually requesting is a remand to consider all issues, then that's within the court's prerogative, of course. But I simply stick to what we wrote in our motion, which is that we ask the court to remand for those discrete issues, cognizability and nexus. All right. Thank you very much, counsel. Thank you. Your Honors, we accept a full and complete remand. But to be clear, it's the government's position that that concerns us right now. That she, that they're not conceding that she suffered past persecution in Mexico. As you recognize, there's overwhelming evidence of that. And that's the only issue on which the board and the IJ ultimately decided the question of past persecution here. And just to clarify, counsel made statements that she didn't testify at the hearing on these questions. First, while Liliana did mention her fears of her husband at the hearing, she extensively talked about this in the I-589, which is her written application for asylum. And that's in the record. She did. She mentioned it in the I-589. And that was introduced into evidence. That was introduced into evidence as Exhibit 2. Exhibit 1 was the... But she didn't testify to it. She did not. She was not asked questions about it by either the government or her counsel. But this court stated in several cases that simply not mentioning something at the hearing because the questions didn't take you there doesn't mean that there's, you know, an issue of credibility or she's trying to hide something. It was not very satisfactory. And it is the duty of the immigration judge to build a complete record. That's correct. But I think we understand the problem. There are two choices, it seems. The government acknowledges we could construe its offer as a... for a total remand without limitation or we could decide the case as it is. Yes, Your Honor. And we think that construing it as a total offer without limitation for remand is the best approach here. Thank you. All right. Thank you, counsel. Thank you very much. And I want to thank Latham and Watkins for doing this pro bono. Thank both counsel for taking this on. We appreciate it and thank you for a very good argument. Both of you, this case will be submitted and we'll take up Berardi v. Paramo.
judges: Reinhardt, Fernandez, Wardlaw